NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALEXX, INC.,**
*Plaintiff-Appellee,*

v.

**CHARM ZONE, INC.,**
*Defendant-Appellant.*

---

2011-1445

---

Appeal from the United States District Court for the Northern District of California in case no. 09-CV-3623, Judge Charles R. Breyer.

---

Decided: May 14, 2012

---

BRETT A. LOVEJOY, Morgan, Lewis & Bockius, LLP, of San Francisco, California, for plaintiff-appellee. With him on the brief was THOMAS M. PETERSON.

ROBERT P. ANDRIS, II, Ropes Majeski Kohn & Bentley, of Redwood City, California, for defendant-appellant. Of counsel was LAEL D. ANDARA.

---

Before RADER, *Chief Judge*, DYK and PROST, *Circuit Judges.*

PER CURIAM.

Charm Zone, Inc. appeals from a final judgment in a patent infringement case enforcing a settlement agreement and awarding damages and attorney's fees to Alexx, Inc. after the district court determined that Charm Zone had breached the settlement agreement. For the reasons set forth below, we *affirm.*

## I. BACKGROUND

Alexx holds three patents covering locator clips used to locate keys and other easily misplaced objects.[1] Alexx sued appellant Charm Zone for patent infringement, copyright infringement, and various state law claims based on Charm Zone's marketing and selling of key locators over the internet.

On July 8, 2010, the parties attended a settlement conference. One of the issues the parties confronted was the need to address Charm Zone's remaining inventory of key locators: both those in stock and those already ordered but not yet received. During negotiations, Alexx turned down a $100,000 cash payment as a term of settlement and instead opted to receive Charm Zone's remaining inventory. *Alexx, Inc. v. Charm Zone, Inc.*, No. C 09-03623, 2011 WL 249471, at *1 (N.D. Cal. Jan. 26, 2011). Charm Zone also agreed to cease selling key locators and withdraw from the key locator market entirely within seven days. For its part, Alexx agreed to

---

[1] United States Design Patent No. D539526, United States Patent No. 7,308,922 B2, and United States Patent No. 7,537,032 B2.

release Charm Zone from any claims arising out of the lawsuit. Alexx did not, however, agree to release Charm Zone for conduct during the seven-day performance window following the execution of the agreement. The parties also agreed to confer jurisdiction on the district court to enforce the settlement agreement. On July 13, 2010 (the "effective date"), the parties executed a written settlement agreement reflecting these terms.

Rather than transferring inventory to Alexx, Charm Zone proceeded to sell its entire remaining inventory within the seven-day performance window. In response, Alexx moved to enforce the settlement agreement. Before the district court, Charm Zone asserted that it had complied with the settlement agreement because, having sold its key locator inventory within seven days of the effective date, it had no "remaining inventory" to provide Alexx within the meaning of the settlement agreement. The district court, however, granted Alexx's motion, finding that the "remaining inventory" language of the settlement agreement meant the inventory which existed at Charm Zone or was on order as of the effective date—not inventory that was in its possession seven days later.

Charm Zone appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

"Because the interpretation of a settlement agreement is not an issue unique to patent law, we apply the law of the appropriate regional circuit." *Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1178 (Fed. Cir. 2011) (citing *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed.Cir.1999)). Under Ninth Circuit law, "[t]he determination of whether contract language is ambiguous

is a matter of law. When the interpretation includes a review of factual circumstances surrounding the contract, the principles of contract interpretation applied to those facts present issues of law" which are reviewed de novo. *In re U.S. Fin. Sec. Litig.*, 729 F.2d 628, 632 (9th Cir. 1984). Moreover, under California Law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

On appeal, Charm Zone asserts that the settlement agreement clearly and unambiguously allowed it to sell its key locator inventory for seven days following the effective date of the settlement agreement. Alexx, however, argues that the district court properly determined that the settlement agreement required Charm Zone to provide Alexx with all of the key locators that Charm Zone possessed or had on order as of the effective date. According to Alexx, Charm Zone's act of selling its entire inventory during the seven-day performance window was a breach of the settlement agreement.

We agree with the district court that Charm Zone's obligation to send its remaining inventory to Alexx meant that Charm Zone had up to seven days to provide it to Alexx, not a week to continue selling. Charm Zone's arguments to the contrary are unpersuasive. As the district court observed, Charm Zone could not cease all market participation instantaneously. In context, the settlement agreement allowed Charm Zone to remain in the key locator market for seven additional days only to wind down its outstanding business commitments, not to liquidate its remaining inventory. The settlement agreement's release provision further confirms that Charm Zone was required to provide Alexx with its remaining inventory as of the effective date, not seven days later. If

Charm Zone were indeed entitled to continue selling key locators after the date of execution, the parties would have agreed to release Charm Zone from liability for doing what the settlement agreement expressly authorized. Yet the settlement agreement only releases Charm Zone from liability up to the effective date, not after. Considering the settlement agreement as a whole, we agree with the district court that Charm Zone's "remaining inventory" refers to the key locators that Charm Zone possessed or had on order as of the effective date of the settlement agreement, not seven days later.

Accordingly, we affirm the final judgment of the district court.

**AFFIRMED**