# United States Court of Federal Claims

No. 12-102 C
September 23, 2013

---

**DOTCOM ASSOCIATES I, LLC,**

> *Plaintiff*,

**v.**

**UNITED STATES OF AMERICA,**

> *Defendant.*

Failure to state a claim;
Implied covenant of good
faith and fair dealing; Leave
to amend a complaint

---

*Jason W. Burnett*, Reed Longyear Malnati & Ahrens, PLLC, Seattle, Washington, for plaintiff.

*Alex P. Hontos*, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION *and* ORDER

**Block,** *Judge*.

Plaintiff filed suit in this court seeking relief based on a disagreement over rental money allegedly owed to plaintiff. In its complaint, plaintiff claims that defendant, *inter alia*, breached the implied covenant of good faith and fair dealing. Now before the court is defendant's motion to dismiss plaintiff's claims relating to breach of the implied covenant for failure to state a claim upon which relief may be granted. *See* Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff opposes that motion and has moved for leave to amend its complaint. *See* RCFC 15(a).

To state a claim for breach of the implied covenant of good faith and fair dealing, a party must do more than allege a simple breach of contract. Specifically, and as explained in more detail below, a party generally must allege some kind of "subterfuge[]" or "evasion[]," such as "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance." Restatement (Second) of Contracts § 205 (1981). Moreover, to survive a RCFC 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations that the defendant acted unreasonably will not suffice.

In this case, plaintiff alleges in its proposed amended complaint that defendant breached the implied covenant of good faith and fair dealing by withholding rental money under a

provision of the rental agreement and "failing to acknowledge," *inter alia*, that the provision does not apply. While not perfectly clear, plaintiff seems to be alleging that defendant's interpretation of the rental agreement—and its refusal to agree with plaintiff—is so unreasonable as to constitute a breach of the implied covenant of good faith and fair dealing.

The problem is that plaintiff has failed to inform the court what precisely the contested provision of the rental agreement says. The court cannot simply accept at face value that defendant's interpretation is so unreasonable that it breaches the implied covenant of good faith and fair dealing. This failure to specify *why* or *how* defendant's interpretation is unreasonable is fatal to plaintiff's argument. Because plaintiff, even in its proposed amended complaint, has failed to state a claim for breach of the implied covenant upon which relief may be granted, the court will deny plaintiff's motion for leave to amend its complaint as futile and grant defendant's motion to dismiss.

## I. BACKGROUND

Plaintiff, a Washington state limited liability company, is the owner of the Kress/Payless Building in Tacoma, Washington. Proposed Amended Complaint (attached to plaintiff's motion for leave to amend) ¶¶ 2.1, 2.2. Plaintiff leased approximately 26,790 square feet of the Kress/Payless Building to the United States in a written lease dated October 19, 2005, *id.* ¶ 2.3, following a Solicitation for Offer (SFO) dated August 5, 2004 and proposals received through June 22, 2005, *id.* ¶ 2.4.

Because the SFO expressed a preference for buildings listed as eligible for inclusion in the National Register of Historic Places and historically-significant buildings in historic districts listed in the National Register, plaintiff proposed to undertake a $6.8 million restoration of the Kress/Payless Building as a Historic Preservation project under Washington state law and Tacoma municipal ordinances. *Id.* ¶¶ 2.5, 2.6. Because such a project has tax consequences under Washington and Tacoma law, the lease included a specifically negotiated terms to deal with those tax consequences. *See id.* ¶¶ 2.7, 2.12, 2.13. First, Paragraph 9 of the lease provides for a base rental rate for one to ten years of $24 per square foot. *Id.* ¶ 2.8. Second, Paragraph 12 of the lease estimates the base real estate taxes to be $1.60 per square foot per year. *Id.* ¶ 2.9. Third, and most importantly, Paragraph 12 of the lease further provides that "[p]ursuant to SFO Paragraph 3.16 *Tax Adjustments*, the benefits of the Historic Tax Credits are to be assumed by Lessor," that is, plaintiff. *Id.* ¶¶ 2.10, 2.11. For reasons unknown, neither party has seen fit to quote SFO Paragraph 3.16 or even to hint at what the paragraph says.

On November 28, 2006, the City of Tacoma Landmarks Preservation Commission granted plaintiff's petition for a Special Valuation Tax Covenant, thus exempting the Kress/Payless Building from real estate taxes effective January 1, 2008. *Id.* ¶¶ 2.12, 2.13. Meanwhile, defendant paid the base real estate taxes from 2006 through 2010. *Id.* ¶ 2.14.

That changed in March 2011 when the contracting officer unilaterally decided (1) to prospectively cease payment of the $1.60 per square foot base real estate taxes, and (2) to withhold $145,889.48 from future rental payments in order to recoup base real estate taxes paid to plaintiff for the years 2007 through 2010. *Id.* ¶ 2.15. Apparently, the contracting officer did not seek or obtain the advice of legal counsel before making this decision. *Id.* ¶ 2.16. In May

2011, defendant set forth the legal basis for its decision to withhold rent: the elusive Section 3.16 E.2 of the May 23, 2005 Amendment to the SFO. [1] *Id.* ¶ 2.20.

Also in May 2011, defendant proposed a supplemental lease agreement to "reimburse the Government $156,268.66 of over payment for real estate taxes . . . ." *Id.* ¶ 2.17. According to plaintiff, the proposed supplemental lease agreement, "failed to meet basic accounting and math standards insofar as it expressly contemplated [plaintiff] not only refunding to [defendant] alleged overpayments, but also expressly contemplated [plaintiff] paying additional monies to [defendant] that were not related to or part of any alleged overpayment by [defendant]." *Id.* ¶ 2.18.

Without ever withdrawing this proposed supplemental lease agreement, *id.* ¶ 2.19, the contracting officer and other officials met with representatives of plaintiff on or about October 26, 2011 to discuss a possible resolution of the lease interpretation dispute. *Id.* ¶ 2.26. According to plaintiff, the meeting was a "charade" in which defendant simply reaffirmed its position without having "sought or obtained any legal opinion regarding the validity of [that] position." *Id.* ¶¶ 2.27, 2.28.

On February 14, 2012, plaintiff filed this suit alleging various claims, including breach of the implied covenant of good faith and fair dealing. There are five ways in which plaintiff alleges defendant breached the implied covenant of good faith and fair dealing:

1. By withholding rental money. *Id.* ¶¶ 3.3-3.6, 3.8.

2. By "[f]ailing to acknowledge that Paragraph 12 of the Lease was drafted, negotiated and executed after Section 3.16 E of the Lease." *Id.* ¶ 3.18.

3. By "[f]ailing to acknowledge that Paragraph 12 of the Lease was drafted specifically to apply to this and only this Lease." *Id.* ¶ 3.18.

4. By "[f]ailing to acknowledge that Section 3.16 E was a printed boilerplate term not drafted specifically to apply to this and only this Lease." *Id.* ¶ 3.18.

5. By "[f]ailing to acknowledge that Defendant's course of conduct from 2007 through and including 2010 constitutes acceptance of an acquiescence to the terms of Paragraph 12 of the Lease." *Id.* ¶ 3.18.

On May 16, 2012, defendant moved to dismiss those portions of plaintiff's complaint relating to breach of the implied covenant of good faith and fair dealing for failure to state a

---

[1] The lease, as quoted in plaintiff's complaint, refers to "SFO *Paragraph* 3.16 *Tax Adjustments*." (first emphasis added). But plaintiff later states that defendant's asserted basis for withholding rent was "*Section* 3.16 E.2 of the May 23, 2005 Amendment to [the] SFO." (emphasis added). Both parties' various representations assume that "Paragraph" 3.16 and "Section" 3.16 are just different names for the same provision. The court cannot independently verify that these representations are correct since the parties have not provided the court with a copy of the rental agreement. The court will nonetheless assume that different nomenclature refers to the same provision, since none of either parties' arguments would be comprehensible if it were otherwise.

claim upon which relief can be granted. Def.'s Motion to Dismiss, ECF Dkt. 6. Plaintiff then moved to amend its complaint, Pl.'s Motion for Leave to Amend, ECF Dkt. 8, which motion defendant opposed as futile, Def.'s Response to Motion for Leave to Amend, ECF Dkt. 9. Plaintiff also opposed the motion to dismiss arguing that it has stated sufficient allegations to support a finding of breach of the implied covenant of good faith and fair dealing. Pl.'s Response to Motion to Dismiss, ECF Dkt. 11. Both parties filed replies in support of their respective motions. Pl.'s Reply in Support of Motion for Leave to Amend, ECF Dkt. 10; Def.'s Reply in Support of Motion to Dismiss, ECF Dkt. 12.

## II. DISCUSSION

### A. Motion to Amend the Complaint

Pursuant to RCFC 15(a), a party who fails to amend a complaint within 21 days after service of a motion to dismiss for failure to state a claim "may amend [its complaint] only with the opposing party's written consent or the court's leave." RCFC 15(a)(2). When a party moves for leave to amend, "[t]he court should freely give leave when justice so requires." *Id.*; *see Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed. Cir. 1989). However, "the existence of such factors as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment'" may justify denial. *Id.* at 1403-04 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alteration in original); *see also Wolfchild v. United States*, 101 Fed. Cl. 54, 64 (2011).

"Regarding futility, a motion to amend may be deemed futile if a claim added by the amendment would not withstand a motion to dismiss." *Wolfchild*, 101 Fed. Cl. at 64 (internal quotations and citation omitted). Thus, "[w]hen a party faces the possibility of being denied leave to amend on the ground of futility, that party . . . must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006); *see also Sanofi-Aventis v. Apotex, Inc.*, 659 F.3d 1171, 1181-82 (Fed. Cir. 2011); 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1487 (3d ed.).

Accordingly, whether the court grants or denies plaintiff's motion for leave to amend, it will have to consider whether the proposed amended complaint would survive a motion to dismiss for failure to state a claim. It is to that question the court now turns.

### B. Motion to Dismiss for Failure to State a Claim

To survive a RCFC 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a). To do this, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1331-32 (Fed. Cir. 2012). "While [the court] generally construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff,

[the court is] not required to accept as true legal conclusions or unwarranted factual inferences." *Id.* at 1331 (internal quotation marks and citation omitted)

Because the factual matter plaintiff must allege here must support a claim for breach of the implied covenant of good faith and fair dealing, it is necessary to understand the nature of such a claim. To start off, it is important to note that every contract includes an implied covenant of good faith and fair dealing. *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010); *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). This implied covenant "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex*, 395 F.3d at 1304. The implied covenant also imposes obligations of diligence and cooperation and includes the duty not to hinder the other party's performance. *See Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1291 (Fed Cir. 2000); *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1542 (Fed. Cir. 1993); *Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988).

Beyond these general descriptions, the specific duties of parties under the implied covenant of good faith and fair dealing depend on the particular circumstances of the case. *See Milmark Servs., Inc. v. United States*, 731 F.2d 855, 859 (Fed. Cir. 1984); *Commerce Int'l Co. v. United States*, 338 F.2d 81, 86 (Ct. Cl. 1964). The Restatement (Second) of Contracts is illustrative:

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

Restatement (Second) of Contracts § 205; *see also* 23 Williston on Contracts § 63.22 (4th ed.) ("A breach of the implied obligation of good faith and fair dealing is obviously present where a party acts in bad faith, but it may also be found where the defendant acts in a commercially unreasonable manner while exercising some discretionary power under the contract."). Moreover, breach of the implied covenant of good faith and fair dealing may consist of "dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts." Restatement (Second) of Contracts § 205. A breach of the implied covenant of good faith and fair dealing may be found when the government undertakes a sovereign action "specifically designed to reappropriate the benefits the other party expected to obtain" under a contract. *Precision Pine*, 596 F.3d at 829 (citing *Centex*, 395 F.3d at 1311); *see also Fireman's Fund Ins. Co. v. United States*, 92 Fed. Cl. 598, 677 (2010).

Applying these standards to the instant case, it is evident that none of plaintiff's five allegations of breach of the implied covenant of good faith and fair dealing state claims upon which relief can be granted. Take, first, plaintiff's claim that defendant breach the implied

covenant of good faith and fair dealing by withholding rental money. Whether or not this is a breach of Paragraph 12 of the rental agreement, it is—standing alone—plainly insufficient to establish a breach of the implied covenant of good faith and fair dealing. *Every* breach of contract suit in this court involves a plaintiff who alleges that a defendant owes the plaintiff money. If withholding rental money by itself was enough to establish a breach of the implied covenant of good faith and fair dealing, *every* breach of contract would also be a breach of the implied covenant.

Plaintiff's remaining four allegations of breach of the implied covenant of good faith and fair dealing consist of averments that defendant as "fail[ed] to acknowledge" various points that plaintiff thinks are both true and relevant. As described above, plaintiff alleges that defendant failed to acknowledge (1) that Paragraph 12 of the Lease was drafted, negotiated and executive after Section 3.16 E of the Lease," (2) "that Paragraph 12 of the Lease was drafted specifically to apply to this and only this Lease," (3) "that Section 3.16 E was a printed boilerplate term not drafted specifically to apply to this and only this Lease," and (4) "that Defendant's course of conduct from 2007 through and including 2010 constitutes acceptance of an acquiescence to the terms of Paragraph 12 of the Lease." *Id.* ¶ 3.18. According to plaintiff, "failing to acknowledge" the rightness of these arguments is itself in dereliction of the implied covenant of good faith and fair dealing.

This failure-to-agree-with-plaintiff theory of breach of the implied covenant of good faith and fair dealing is quite novel. Charitably, one might read these four allegations as presenting additional context for the first. Under this view, plaintiff is alleging that the withholding of rent is a breach of the implied covenant in view of everything defendant "fail[ed] to acknowledge." With that understanding of plaintiff's argument, one might further surmise (again, charitably) that plaintiff is asserting that defendant's invocation of Section 3.16 in contravention of Paragraph 12 is so outlandish—so contrary to the parties' expectations—that it qualifies as a breach of the implied covenant of good faith and fair dealing. *See* Restatement (Second) of Contracts § 205 (providing that the implied covenant may be breached when one "assert[s] an interpretation contrary to one's own understanding").

The problem is that if plaintiff were alleging that defendant's interpretation of Paragraph 12 and Section 3.16 is unreasonable, then one would expect plaintiff to at some point tell the court what Section 3.16 says. A complaint that bases a claim for breach of the implied covenant of good faith and fair dealing on the asserted unreasonableness of the defendant's interpretation of a contract *but does not even mention the language of the relevant contractual provision* does not "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In short, from what plaintiff has alleged, no reasonable inference may be drawn that defendant has interpreted the lease unreasonably, let alone contrary to its "own understanding." Restatement (Second) of Contract § 205.

Plaintiff does not help matters when, in its proposed amended complaint, it stresses that the contracting officer and other government officials did not seek legal advice before withholding rent and did not back down from their position at the October 2011 meeting. "Failure to obtain legal advice does not mandate a finding of willfulness or bad faith," *Delta-X Corp. v. Baker Hughes Production Tools, Inc.*, 984 F.2d 410, 414 (Fed. Cir. 1993), and no authority stands for the proposition that a contracting officer's failure to obtain counsel prior to allegedly breaching a contract transforms that alleged breach of contract into a breach of the

implied covenant of good faith and fair dealing. There is likewise no authority for the proposition that the government must agree with a contractor on contract interpretation so as to avoid litigation. To be sure, although some may wish for the contrary, there exists no universal rule, court-made or not, that government agents must obtain legal advice before acting within the scope of their duties.

Finally, plaintiff's insistence in its proposed amended complaint that the proposed supplemental agreement "failed to meet basic accounting and math standards" is conclusory, and therefore not "sufficient factual matter" for stating a claim for relief. *See Iqbal*, 556 U.S at 678 (citing *Twombly*, 550 U.S. at 570). Plaintiff does not say *what* "basic accounting and math standards" it is referring to, *how* the proposed supplemental agreement violated them, or even *how* a merely "proposed" supplemental agreement has caused plaintiff to suffer any damages. Because its allegations are both conclusory and unclear, plaintiff has not stated a claim upon which relief may be granted.

### III. CONCLUSION

For the foregoing reasons, amending the complaint would be futile. Plaintiff's MOTION for leave to amend its complaint is therefore DENIED. Because plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing upon which relief may be granted, defendant's MOTION to dismiss plaintiff's claims relating to the implied covenant is GRANTED.

**IT IS SO ORDERED.**

s/ *Lawrence J. Block*

Lawrence J. Block
Judge